J-S31012-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| A.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.C. | : | |
| | : | |
| Appellant | : | No. 1574 WDA 2018 |

Appeal from the Order Entered October 8, 2018
In the Court of Common Pleas of Erie County Domestic Relations at
No(s):  NS 201401336

BEFORE:  OLSON, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY OLSON, J.:                    **FILED AUGUST 06, 2019**

M.C.[1] (hereinafter "Mother") appeals from the order entered on October 8, 2018, which denied her petition to modify child support.  We affirm.

At all relevant times, A.M. (hereinafter "Father") has been a police officer for the City of Erie Police Department.  **See** Conference Officer Summary, 10/16/14, at 2.  Mother has prior experience as a schoolteacher – first, in Erie, Pennsylvania, where she earned approximately $50,000.00 per year and then, in 2013, when she worked for Citizen's Academy in Ohio, earning $39,937.69 per year.  **See id.**; N.T. Modification Hearing, 10/1/18, at 7 and Father's Exhibit B.

_____

[1] As this case involves issues dealing with child support, we refer to the parties by their initials to protect the identity of the children.  We amended the caption accordingly.

On August 25, 2014, Father filed a complaint against Mother, seeking support for their two minor children, Child A.M. (born in 2008) and Child L.M. (born in 2010). Child Support Complaint, 8/25/14, at 1. During the October 10, 2014 office conference, Mother "asserted that she [was] not working due to the cost of day care and the cost of pursuing her graduate degree." Conference Officer Summary, 10/16/14, at 2. The conference officer imputed to Mother an income equal to her "2013 wages from her position at Citizen's Academy." *See* Conference Officer Summary, 10/16/14, at 2. This amounted to $2,487.06 net income per month (or, $39,937.69 gross income per year). *Id.*; *see also* N.T. Modification Hearing, 10/1/18, at Father's Exhibit B. The officer determined that Father's net income per month was $2,932.93. Conference Officer Summary, 10/16/14, at 2.

On December 8, 2014, the trial court entered a final child support order. In accordance with the conference officer's findings, the trial court determined that Father's net monthly income was $2,932.93 and that Mother's net monthly income (as imputed from her earning capacity) was $2,487.06. Final Child Support Order, 12/8/14, at 1. The trial court ordered that Mother pay Father a total of $941.80 per month in child support; Mother's $941.80 per month obligation consisted of "$841.80 for current support and $100.00 for arrears." *Id.* at 1-2.

On October 27, 2016, Mother filed a *pro se* petition to modify the child support order, where she sought a decrease in her support obligation. At the

conclusion of the office conference, the conference officer prepared a summary, which declared:

> Conference was held on [December 8, 2016] to address [Mother's] petition for a decrease. At the time of the conference[, Father] appeared with [his] attorney, and [Mother] participated *via* telephone. . . .
>
> [Mother] stated at the time of the conference that she is currently unemployed as she has two minor children in her household that she is taking care of. [Mother] stated her husband is her sole financial support at this time and they cannot afford child care. [Mother] stated she is participating in Ohio's job search program, however[, she] won't be re-entering the workforce until her youngest child is of preschool age. [Mother] also stated the previous order included tuition which [Father] is no longer incurring. . . .
>
> [Father] agreed that he no longer has private school tuition nor does [he have] any child care expenses. [Father] also advised he did have a pay increase and provided verification. [Father] did dispute [Mother's] income[,] however, as he stated that she has a teaching degree and is choosing to stay home with her other children. [Father's] attorney requested a copy of [Mother's] and her [current] husband's joint tax return from 2015 to verify that they cannot afford child care, and also [pointed out] the additional income in [Mother's] household. [Mother] did agree to fax a copy of the [tax] return to the officer by the end of the day; however, it was never received. . . .
>
> [Mother] also brought up that she pays for the children's extra-curricular expenses and her husband covers their health insurance. [Father] disputed the health insurance premiums being taken into consideration as [Mother's] husband has family coverage for their own two children and it cost[s] no additional amount to add these two children to the policy. Further, no verification of these costs [was] submitted for the scheduled conference. . . .
>
> Guidelines were run based on the verification submitted by [Father] and holding [Mother] to her prior earning capability.

> Guidelines did call for a decrease in current support which [Father] was agreeable to. . . .

Conference Officer Summary, 12/12/16, at 2-3.

> The conference officer recommended the following:

> Current support is modified to $671.08/month for two minor children effective [October 24, 2016,] date of filing. Obligation amount is in accordance with guidelines run holding [Mother] to her prior earning [capacity]. . . . Obligation amount also includes a proportionate reduction taking into consideration [Mother's] intact family. Further, [Mother] shall be ordered to pay $270.00/month towards arrears due and owing. [An increase in payment towards arrears] is recommended due to the substantial amount of arrears owed.

*Id.* at 3.

An interim order was entered on December 9, 2016, which memorialized the conference officer's support recommendation. Interim Order, 12/9/16, at 1.

Following the office conference, Mother demanded a *de novo* hearing before the trial court. However, Mother later withdrew her hearing request and, by order entered on March 13, 2017, the December 9, 2016 interim support order was made final. Trial Court Order, 3/13/17, at 1.

On May 23, 2018, Mother filed the current petition to modify her child support obligation (hereinafter "Current Modification Petition"). The petition requested a decrease in Mother's support obligation because "[Mother] now has a third child with her husband . . . [and] it is believed that [Father's] income has increased since the time of the last conference or hearing." Mother's Current Modification Petition, 5/23/18, at 1.

- 4 -

The conference officer held a conference on Mother's petition and, at the conclusion of the conference, issued the following summary:

> [Mother's attorney (hereinafter "Mother's Counsel")] filed the Current Modification Petition] due to the following: 1) [Mother] now has a third minor child with her husband[ and] 2) [Father's] income has increased since the last conference. A conference was scheduled for June 27[,] 2018. . . . Both parties were present for scheduled conference along with respective counsel at which time an agreement could not be entered.
>
> [Mother's Counsel] stated [Mother] is a stay at home mother as she has three minor children in her household including a [nine-month-old] baby. She further asserts that [Mother] has not taught school in over four years and her license/teaching certificate has expired. [Mother] also has pending criminal charges [and,] therefore, has no ability to obtain a job earning over $39,000.00 at this time.
>
> [Father's attorney (hereinafter "Father's Counsel")] provided [Father's] income, 2017 Federal tax return[,] and insurance documentation for the two minor children. [Father's Counsel] stated [Mother] was held to an earning capacity by [the trial court] in 2014[,] which was four years ago. If [Mother] was still teaching her income would be higher in 2018. [Mother] has not tried to mitigate her loss of income in the past four years as she is not employed at this time.

Conference Officer Summary, 7/11/18, at 2-3 (some capitalization omitted).

The officer recommended the following:

> Based on [the parties'] monthly net incomes, as reflected above, the guidelines would direct $564.83/month for the support of two minor children. . . . Current support order is modified to direct $564.83/month for the support of two minor children. Obligation amount is in accordance with guidelines ran holding [Mother] at her prior earning potential of $39,937.60/annual gross less union dues and mandatory retirement pursuant to [Pa.R.C.P.] 1910.16-2(d)(1).

> Effective date of the recommended order is [May 23, 2018,] date of filing.

*Id.* at 3 (some capitalization omitted).

On July 6, 2018, the trial court entered an interim order in accordance with the conference officer's recommendation. Interim Order, 7/6/18, at 1.

Mother demanded a *de novo* hearing and, on October 1, 2018, the trial court held the hearing. During this hearing, the parties introduced documentary exhibits and offered argument, but chose not to present testimony. *See* N.T. Modification Hearing, 10/1/18, at 1-18. Further, during the hearing, Mother essentially argued that:

> [her] earning capacity is [set] too high because [she] would have to get recertified [to teach] and she also is taking care of her children and the expense of taking care of the children could wipe out any type of income she's going to have.

*See id.* at 5-6.

On October 8, 2018, the trial court entered an order declaring: "the court finds the [July 6, 2018] interim order . . . appropriate. Therefore, the . . . July 6, 2018 [order] is hereby made a final order." Trial Court Order, 10/8/18, at 1 (some capitalization omitted). Mother filed a timely notice of appeal from this order. She numbers seven claims in her statement of questions involved:

> [1.] Whether the trial court erred and/or abused its discretion when it failed to apply the standards set forth in ***Novinger v. Smith***, 880 A.2d 1255 (Pa. Super. 2005) (holding passage of time constituting a prolapsed period allows reevaluation of earning capacity); ***Forry v. Forry***, 519 A.2d 516 (Pa. Super. 1986), and such progeny[?]

- 6 -

[2.] Whether the trial court erred and/or abused its discretion when it failed to apply the standards set forth in **Litmans v. Litmans**, 673 A.2d 382 (Pa. Super. 2006) (finding imputed earning capacity must be realistic and not theoretical); and **Labar v. Labar**, 731 A.2d 1252 (Pa. 1999) (holding trial courts must look at the actual disposable income of the parties in determining support)[?]

[3.] Whether the trial court erred and/or abused its discretion when it failed to, in lieu of applying the guidelines to a non-existent income, apply a deviation from the same due to actual income of [Mother?]

[4.] Whether the trial court erred and/or abused its discretion as to the opinion and its findings therein were against the weight, and not supported by, the evidence presented at trial[?]

[5.] Whether the trial court erred and/or abused its discretion when it failed to apply the nurturing parent doctrine[?]

[6.] Whether the trial court erred and/or abused its discretion when it failed to offset its theoretical earning capacity determination by the cost of daycare[?]

[7.] Whether the trial court erred and/or abused its discretion when it failed to consider and apply the factors set forth in Pa.R.C.P. 1910.16-5(b), including consideration of the existing custody order and the three additional minor children in Mother's household[?]

Mother's Brief at 4-5 (some capitalization omitted).

As our Supreme Court explained:

We review child support awards for an abuse of discretion. A court does not commit an abuse of discretion merely by making an error of judgment. Rather, a court abuses its discretion if it exercises judgment that is manifestly unreasonable or the result of partiality, prejudice, bias, or ill-will as shown by the evidence of record. Th[e Pennsylvania Supreme] Court has further observed that we will not disturb a support order unless the trial court failed to consider properly the requirements of the rules governing support

actions. Additionally, [where an] appeal presents questions of law, . . . our standard of review is *de novo* and our scope of review is plenary for such questions.

***Hanrahan v. Bakker***, 186 A.3d 958, 966 (Pa. 2018) (quotations and citations omitted).

Further:

an award of support, once in effect, may be modified *via* petition at any time, provided that the petitioning party demonstrates a material and substantial change in their circumstances warranting a modification. ***See*** 23 [Pa.C.S.A.] § 4352(a); ***see also*** Pa.R.C.P. 1910.19. The burden of demonstrating a "material and substantial change" rests with the moving party, and the determination of whether such change has occurred in the circumstances of the moving party rests within the trial court's discretion.

***Summers v. Summers***, 35 A.3d 786, 789 (Pa. Super. 2012) (some quotations and citations omitted); ***see also*** 23 Pa.C.S.A. § 4352(a) ("[a] petition for modification of a support order may be filed at any time and shall be granted if the requesting party demonstrates a substantial change in circumstances"); ***Commonwealth ex rel. Levy v. Levy***, 361 A.2d 781, 784 (Pa. Super. 1976) (*en banc*) ("it is the burden of the party seeking to modify the order to show by competent evidence such a change of circumstances as will justify a modification").

Although Mother numbers seven claims in her statement of questions involved, she did not argue many of these claims in the argument section of her brief. ***See*** Mother's Brief at 9-15. We discern three claims raised in the argument section of Mother's brief: 1) the trial court erred when it refused to "deviate from the amount of support determined by the guidelines;" 2) the

trial court erred when it imputed to Mother an income equal to her earning capacity because she did not voluntarily reduce her income or earning capacity; and, 3) the trial court erred when it imputed to Mother an income equal to her earning capacity because she is taking care of young children and, thus, entitled to the benefit of the nurturing parent doctrine. *Id.* We will consider these three claims in our memorandum;[2] the remaining claims listed in Mother's statement of questions involved, but not argued in the argument section, are waived. *See Commonwealth v. Spotz*, 716 A.2d 580, 585 n.5 (Pa. 1999) ("[the Pennsylvania Supreme Court] has held that an issue will be deemed to be waived when an appellant fails to properly explain or develop it in his brief").

First, Mother claims that the trial court erred when it refused to "deviate from the amount of support determined by the guidelines." Mother's Brief at 12. Mother did not raise this claim before the trial court. *See* Mother's Current Modification Petition, 5/23/18, at 1; N.T. Modification Hearing, 3/22/19, at 2-18 (Mother only claimed that the trial court should not impute to her an income equal to her earning capacity and that her earning capacity is lower

---

[2] Mother has not divided the argument section of her brief into separate parts. *See* Pa.R.A.P. 2119(a) ("[t]he argument shall be divided into as many parts as there are questions to be argued"). Nevertheless, as this failing does not impede our ability to conduct meaningful appellate review, we will not find Mother's issues waived. *See Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) ("when defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived"); Pa.R.A.P. 2101.

than what the trial court determined). Therefore, Mother waived her first claim on appeal. Pa.R.A.P. 302(a) ("[i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal").

Next, Mother claims that the trial court erred when it imputed to her an income equal to her earning capacity because she did not voluntarily reduce her income. According to Mother, "Mother did not change her employment status to evade support. Rather, she chose to start a new family." Mother's Brief at 10-11. She also claims that, since she "let her teaching license lapse[] and would need to be re-certified and re-licensed to resume teaching . . . it was not possible for Mother to work as a teacher and it was an abuse of the [trial c]ourt's discretion to disregard that factor." *Id.* at 11. These claims fail.

Child support "shall be awarded pursuant to statewide guidelines." 23 Pa.C.S.A. § 4322(a). "In determining the ability of an obligor to provide support, the guidelines place primary emphasis on the net incomes and earning capacities of the parties." *Mackay v. Mackay*, 984 A.2d 529, 537 (Pa. Super. 2009) (quotations and citations omitted).

Pennsylvania Rule of Civil Procedure 1910.16–2 provides that, generally, "the amount of support to be awarded is based upon the parties' monthly net income." Pa.R.C.P. 1910.16–2. Nevertheless, Rule 1910.16–2 lists certain exceptions to this general rule. Relevant to the current appeal, Rule 1910.16-2(d)(4) declares that, "[i]f the trier of fact determines that a party to a support action has willfully failed to obtain or maintain appropriate

employment, the trier of fact may impute to that party an income equal to the party's earning capacity." Pa.R.C.P. 1910.16-2(d)(4).

To determine a party's earning capacity, the rule states:

> Age, education, training, health, work experience, earnings history and child care responsibilities are factors which shall be considered in determining earning capacity. In order for an earning capacity to be assessed, the trier of fact must state the reasons for the assessment in writing or on the record. Generally, the trier of fact should not impute an earning capacity that is greater than the amount the party would earn from one full-time position. Determination of what constitutes a reasonable work regimen depends upon all relevant circumstances including the choice of jobs available within a particular occupation, working hours, working conditions and whether a party has exerted substantial good faith efforts to find employment.

Pa.R.C.P. 1910.16-2(d)(4).

An earning capacity is the amount a party could realistically earn under the circumstances. *Haselrig v. Haselrig*, 840 A.2d 338, 340 (Pa. Super. 2003), *citing* *Myers v. Myers*, 592 A.2d 339, 343 (Pa. Super. 1991). However, generally, a party's earning capacity will not be altered if she "voluntarily assumes a lower paying job, quits a job, leaves employment, changes occupations or changes employment status to pursue an education, or is fired for cause." Pa.R.C.P. 1910.16-2(d)(1). In accordance with this principle, we have held:

> a parent may not intentionally reduce his or her earnings and then use the reduction in earnings to obtain a reduction in the amount of support which that parent must provide for his or her children. . . . The rationale underlying these decisions is that a parent has a duty to his or her children and therefore

- 11 -

> a parent should not be permitted to evade that responsibility by deliberately reducing his or her income.

**Roberts v. Bockin**, 461 A.2d 630, 632 (Pa. Super. 1983).

The trial court initially established Mother's earning capacity in 2014, when it entered a final support order and imputed to Mother an income equal to her "2013 wages from her position at Citizen's Academy." **See** Conference Officer Summary, 10/16/14, at 2. This amounted to $2,487.06 net income per month (or, $39,937.69 gross income per year). **Id.**; Final Child Support Order, 12/8/14, at 1; **see also** N.T. Modification Hearing, 10/1/18, at Father's Exhibit B. On appeal, Mother attempts to re-litigate the trial court's initial, 2014 determination by arguing that the trial court erred when it first imputed to her an income equal to her earning capacity of $39,937.69 because:

> Mother did not change her employment status to evade support. Rather, she chose to start a new family. And neither party to this matter introduced any evidence that would indicate that Mother's motives in leaving her teaching job had anything to do with her support obligation.

Mother's Brief at 10-11.

We will not revisit the trial court's 2014 order, as that order became final years ago. Therefore, Mother's claim that the trial court erred when it initially imputed to her an income equal to her earning capacity of $39,937.69 fails. **See Crawford v. Crawford**, 633 A.2d 155, 157 (Pa. Super. 1993) ("[a] petition to modify an order of support cannot be a substitute for an appeal and a party may not attempt to relitigate matters adjudicated in the existing order"); **Fitzpatrick v. Fitzpatrick**, 603 A.2d 633, 637 n.5 (Pa. Super. 1992)

("we are presented here with a petition to modify, and not an appeal from an original order. As such, only subsequent changes in the parties' positions may be considered"); ***Beegle v. Beegle***, 652 A.2d 376, 378 (Pa. Super. 1994) ("[a]llegations of error in the factual findings of a lower court are properly addressed by filing exceptions and an appeal to this Court, not by filing a petition to modify in the same court that rendered the order").

Mother also contends that the trial court erred in imputing to her an income equal to her earning capacity as a teacher because she has since "let her teaching license lapse[] and would need to be re-certified and re-licensed to resume teaching." Mother's Brief at 11. This claim fails because Mother's decision to "let her teaching license lapse" was a voluntary act on her part and she introduced no evidence at the modification hearing to explain the reason why she allowed her teaching license to lapse. ***See*** N.T. Modification Hearing, 10/1/18, at 2-18. As we have held:

> to modify a support obligation based upon reduced income, a petitioner must first establish that the voluntary change in employment which resulted in a reduction of income was not made for the purpose of avoiding a child support obligation and secondly, that a reduction in support is warranted based on petitioner's efforts to mitigate any income loss.

***Grimes v. Grimes***, 596 A.2d 240, 242 (Pa. Super. 1991).

Here, Mother introduced no evidence as to the reason why she allowed her teaching license to lapse. Therefore, Mother failed to sustain her burden of production at the trial level and her claim on appeal necessarily fails.

Finally, Mother claims that the trial court erred in imputing to her an income equal to her earning capacity because she is taking care of young children and, thus, entitled to the benefit of the nurturing parent doctrine. This claim also fails.

As we have explained:

> In appropriate cases, . . . the earning capacity of a parent who elects to stay home with a young child need not be considered when calculating support. This nurturing parent doctrine excuses the parent from contributing support. When applying the doctrine, a trial court must consider the age and maturity of the child, the availability of others who might assist the child, the availability of others who might assist the parent, the adequacy of financial resources at home, and finally, the parent's desire to stay home and nurture the child.
>
> . . .
>
> In determining whether the nurturing parent doctrine should apply, the issue is not for whose child the mother is caring, but whether under the facts of the case what her earning capacity should be.

*Reinert v. Reinert*, 926 A.2d 539, 543 (Pa. Super. 2007) (quotations, citations, and corrections omitted).

As is relevant to the nurturing parent doctrine, the only evidence introduced at the modification hearing was: Mother stays at home to care for the three children she has with her new husband; these three children are aged five, three, and one; Mother "would need to spend approximately $36,000 on day-care if she worked;" and, Mother's new husband's "income was approximately $109,000 in 2017." Trial Court Opinion, 10/5/18, at 1-3; N.T. Modification Hearing, 10/1/18, at 3 and 6. Mother did not testify at the

modification hearing and she introduced no evidence regarding: "the availability of others who might assist the child[ren], the availability of others who might assist [Mother]," or Mother's motives for choosing to stay at home to care for her children. *See* N.T. Modification hearing, 10/1/18, at 1-18; *see also Reinert*, 926 A.2d at 543.

Mother, as the petitioner seeking a decrease in her child support obligation, bore the burden of demonstrating the applicability of the nurturing parent doctrine. *See Summers*, 35 A.3d at 789; *see also* 23 Pa.C.S.A. § 4352(a). Simply stated, Mother failed to introduce sufficient evidence to demonstrate that application of the nurturing parent doctrine was appropriate in her case. Therefore, the trial court did not abuse its discretion when it refused to apply the doctrine. Mother's claim on appeal thus fails.

Order affirmed. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/6/2019